IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BETTY GLEIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 10-452-GPM |
| | ) |
| BOEING COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

On April 30, 2010, Plaintiff Betty Glein filed this action in Illinois state court against, inter alia, Defendant United Technologies Corporation ("UTC") in connection with mesothelioma that she allegedly contracted due to secondary exposure to asbestos fibers on the skin, hair, and clothing of her ex-husband Eldon Glein as a result of his work on or around Pratt & Whitney aircraft engines during his service as an aviation mechanic in the United States Navy ("USN") from 1970 until 1974.[1] UTC has removed the case from state court to this Court, contending that Mrs. Glein's

---

1. UTC's co-Defendants are, in addition to Boeing Co.: Bondex International, Inc.; Borg-Warner Corp. by its successor-in-interest, BorgWarner Morse Tec, Inc.; Brand Insulations, Inc.; Buffalo Pumps, Inc.; CBS Corp., a Delaware corporation, successor by merger to CBS Corp., a Pennsylvania corporation f/k/a Viacom, Inc. f/k/a Westinghouse Electric Corp.; Certain Teed Corp.; Crown Cork & Seal Co.; Dana Corp.; Deere & Co.; Ford Motor Co.; Garlock Sealing Technologies, LLC; General Dynamics Corp.; General Electric Co.; Georgia Pacific, LLC; Goodyear Tire & Rubber Co.; Hawker Beechcraft Corp. f/k/a Raytheon Aircraft Co.; Honeywell International, Inc., individually and as successor-in-interest to Alliedsignal, Inc., and Bendix Corp.; John Crane, Inc.; Kentile Flooring, Inc.; Lockheed Martin Corp.; Metropolitan Life Insurance Co.; North American Aviation Development, LLC; Northrop Grumman Systems Corp.; Owens-Illinois, Inc.; Pneumo Abex, LLC; Pratt & Whitney Engine Services, Inc.; and Union Carbide Corp.

claims against it are based on UTC's alleged failure to warn of the dangers relating to asbestos used as insulation in aircraft engines supplied by UTC to the USN, so that UTC is entitled to invoke federal jurisdiction pursuant to 28 U.S.C. § 1442, the so-called "federal officer" removal statute. Mrs. Glein in turn has filed what she styles an "emergency" motion for remand of this case to state court for lack of subject matter jurisdiction (Doc. 5).[2] Having considered the matter carefully, the Court concludes that this case is due to be remanded to state court.

Pursuant to 28 U.S.C. § 1442(a), federal courts have jurisdiction under the following circumstances:

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district of the United States for the district and division embracing the place wherein it is pending:
> (1) The United States or any agency thereof or any officer (or any other person acting under that officer) of the United States or of any agency thereof, sued in an official capacity for any act under color of such office[.]

28 U.S.C. § 1442(a)(1). To effect removal as a person acting under a federal officer, UTC must prove three elements: (1) it is a "person" within the meaning of the statute; (2) it acted under the direction of a federal officer, meaning that there is a nexus or causal connection between Mrs. Glein's claims and acts UTC performed under the direction of a federal officer; and (3) UTC has a colorable federal defense to state-law liability. *See Mesa v. California*, 489 U.S. 121, 129 (1989). This statute overcomes the familiar "well-pleaded complaint" rule governing so-called

---

2. The Court notes that 28 U.S.C. § 1446(c), the authority upon which Mrs. Glein relies for her "emergency" request for remand, pertains solely to removals of criminal prosecutions. The Court understands Mrs. Glein's motion merely to be a request for prompt resolution of the question of whether this case must be remanded for lack of subject matter jurisdiction, a request with which the Court is pleased (indeed, obliged) to comply. *See Johnson v. Wattenbarger*, 361 F.3d 991, 992 (7th Cir. 2004) (a district court's "first duty in every suit" is "to determine the existence of subject-matter jurisdiction").

"federal question" jurisdiction by providing a method to remove a case brought in state court against a federal officer, or any person acting under a federal officer, despite the absence of a federal cause of action. *See Jefferson County, Ala. v. Acker*, 527 U.S. 423, 430-31 (1999). This is because, the Supreme Court of the United States has noted, one of the central purposes of the federal officer removal statute is to ensure that a federal court will adjudicate the validity of a defendant's official immunity defense. *See Arizona v. Manypenny*, 451 U.S. 232, 242 (1981). Similarly, Section 1442(a) does not require UTC to notify or obtain the consent of any other Defendant in this case in order to remove the entire case to federal court. *See Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981). Instead, Section 1442(a) creates special ancillary jurisdiction over the state claims, and "the district court may take the entire case, even if it would not have jurisdiction over any of the claims against a codefendant." *Williams v. City of Atlanta*, 794 F.2d 624, 628 (11th Cir. 1986). "A defendant seeking removal [under Section 1442] bears the burden of establishing federal subject matter jurisdiction," and "[d]oubts concerning removal must be resolved in favor of remand to the state court." *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 841 (S.D. Ill. 2006).

In this case it is undisputed that UTC, a corporation, is a "person" for purposes of the first prong of the test of federal officer jurisdiction. *See Stephens v. A.W. Chesterton, Inc.*, Civil No. 09-633-GPM, 2009 WL 3517560, at *2 (S.D. Ill. Oct. 22, 2009) ("[A] corporation is a 'person' within the meaning of 28 U.S.C. § 1442[.]"). Principally at issue here are the requirements of "acting under" under a federal officer and a colorable federal defense. To meet the former requirement, the United States Supreme Court has instructed, "[t]here must be a causal connection between what the [removing defendant] has done under asserted official authority and the state

prosecution." *Mesa*, 489 U.S. at 131 (quoting *Maryland v. Soper*, 270 U.S. 9, 33 (1926)). "It must appear that the prosecution of [the removing defendant], for whatever offense, has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and he must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty." *Id*. at 131-32. In the context of a claim of failure to warn such as is asserted against UTC in this case, the removing defendant must establish that the government's control over warnings directly interfered with the defendant's ability to fulfill its state-law obligation to warn of safety hazards. *See Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1155 (D. Colo. 2002) ("What [the defendants] must establish for purpose of . . . § 1442(a)(1) is that the government authority under which they worked required them to act as they did. For purposes of Plaintiffs' failure to warn claims . . . [the defendants] must establish [that the government's] direction and control of their activities directly interfered with their ability to fulfill their state law obligation to warn employees of safety hazards."); *Overly v. Raybestos-Manhattan*, No. C-96-2853 SI, 1996 WL 532150, at *4 (N.D. Cal. Sept. 9, 1996) (a defendant failed to show a causal nexus between actions allegedly taken at the direction of a federal officer and claims of failure to warn because "[t]he government in no way restricted [the defendant's] ability to notify individuals of the presence of asbestos in the work environment.").

As to the requirement of a colorable federal defense, UTC invokes the so-called "government contractor defense" or "military contractor defense." In *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), the Court held that a private contractor may invoke a federal affirmative defense to potential liability under state law for design defects in products or equipment that it produces for the United States, provided the contractor can show that: (1) the United States approved reasonably

precise specifications for the products or equipment; (2) the products or equipment conformed to those specifications; and (3) the contractor warned the United States about any dangers known to the contractor but not to the United States. *See id.* at 512. In the context of a claim of failure to warn, in order to satisfy the first element of the government contractor defense a defendant must show that the government itself dictated an inadequate warning that was meant to accompany a product. *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 401 (5th Cir. 1998) (contractors hired to produce the carcinogenic defoliant Agent Orange for military use during the Vietnam War established the first element of the *Boyle* standard by showing that they did not put warnings on the product because they "were specifically prohibited from placing any warnings on the finished product itself except as allowed by contract."); *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996) (quoting *Boyle*, 487 U.S. at 512) ("[T]he government contractor's defense . . . is inapplicable to a failure to warn claim in the absence of evidence that in making its decision whether to provide a warning, [the defendant] was . . . acting in compliance with 'reasonably precise specifications' imposed on [it] by the United States."); *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 630 (2d Cir. 1990) ("*Boyle*'s requirement of government approval of 'reasonably precise specifications' mandates that the federal duties be *imposed* upon the contractor. The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official, . . . and thus that the Government itself 'dictated' the content of the warnings meant to accompany the product.") (emphasis in original).[3]

---

3. "The second prong of the test of federal officer jurisdiction and the first prong of the government contractor defense are very similar, obviously, and they tend to merge in the analysis of a claim of federal officer jurisdiction." *Stephens*, 2009 WL 3517560, at *2 n.2 (citing *Hilbert v. Aeroquip, Inc.*, 486 F. Supp. 2d 135, 147-48 & n.11 (D. Mass. 2007)).

Turning then to the issue of whether UTC has met its burden of showing a causal nexus sufficient to satisfy the acting under requirement and a colorable federal defense, the Court concludes that it has not done so. In support of its notice of removal UTC has submitted to the Court the affidavit of Allan J. Shiffler, an engineer employed by UTC's Pratt & Whitney division from 1966 until 2003. According to Shiffler,

> Any written materials, such as warnings or product manuals, that accompanied the engines built by Pratt & Whitney for the United States Navy were . . . controlled and approved by the United States Navy. Pratt & Whitney equipment manuals were approved by the United States Navy and distributed by the Department of Defense. Equipment suppliers like Pratt & Whitney were prohibited from providing warnings on or with equipment supplied to the Navy without the prior consent and approval of the Navy. In addition, the Navy would instruct equipment suppliers like Pratt & Whitney to add or include warnings where such warnings were deemed appropriate by the Navy.

Doc. 2-2 at 3 ¶ 11.[4]  As Mrs. Glein's counsel point out, the fact that warnings required prior USN approval does not mean that UTC was prevented from giving adequate warnings about the asbestos contained in the aircraft engines that it manufactured for the USN, only that UTC had to have USN approval for the warnings that accompanied its products. Indeed, not only is there no evidence that the USN prevented UTC from complying with state-law duties to warn of the danger of asbestos contained in the engines UTC supplied to the USN, but Mrs. Glein's counsel have adduced evidence that the USN expected manufacturers to supply warnings concerning hazardous

---

4. UTC also has submitted in support of its notice of removal the affidavit of William P. Ringo, an industrial hygenist. *See* Doc. 2-3. The gist of Ringo's affidavit is that the USN's knowledge of the health hazards associated with the use of asbestos in aircraft engines during the time that Mrs. Glein's ex-husband was serving in the USN as an aviation mechanic represented the state of the art and, consequently, UTC could not have possessed any information regarding the dangers posed by the use of asbestos in aircraft engines that was not already known by the USN. Because the Court concludes that UTC has failed to satisfy the first prong of the *Boyle* standard, it need not address whether UTC has satisfied the third prong of the standard.

substances in military equipment in accordance with state law. A memorandum dated September 1956 from the Office of the Secretary of the Navy regarding labeling of hazardous substances specifically states that warnings accompanying products manufactured for the USN by contractors are "to be affixed by the manufacturer." Doc. 5-2 at 1. Further, the memorandum states that the content of such manufacturer-created warnings is to be "governed by State and Federal laws and regulations depending on the nature of the material and whether the shipment is interstate or intrastate." *Id*. It is clear that the USN expected equipment manufacturers like UTC to furnish the warnings that accompanied the products that they produced for the USN and that such warnings would comply with state law. The Court cannot find either a causal nexus between acts taken by UTC at the direction of the USN and the failure to warn alleged by Mrs. Glein or that the USN approved reasonably precise specifications that prevented UTC from complying with its state-law duty to warn for purposes of the *Boyle* government contractor defense. *See Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 663 (E.D. Tex. 1999) (federal officer removal was improper where "the federal government provided no direction or control on warnings when using asbestos . . . [and] did not prevent Defendants from taking their own safety precautions heeding state-law standards[.]"). Mrs. Glein's motion to remand (Doc. 5) is **GRANTED** and, pursuant to 28 U.S.C. § 1447(c), this case is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, for lack of federal subject matter jurisdiction.

    **IT IS SO ORDERED.**

    DATED: June 25, 2010

                                         /s/ G. Patrick Murphy
                                         G. PATRICK MURPHY
                                         United States District Judge